[Cite as *State v. Masin*, 2020-Ohio-6780.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio/City of Vermilion                 Court of Appeals No. E-20-004

       Appellee                                 Trial Court No. TRC 1900994 A

v.

John D. Masin                                    **DECISION AND JUDGMENT**

       Appellant                                Decided:  December 18, 2020

* * * * *

Wayne R. Nicol, Vermilion Prosecuting Attorney, for appellee.

David M. Lowry, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This case is before the court on appeal by appellant, John D. Masin, from the January 9, 2020 judgment of the Vermilion Municipal Court.  For the reasons that follow, we affirm.

{¶ 2} Appellant sets forth three assignments of error:

    1.  The Trial Court erred in not granting Defendant's Motion to

Suppress as the evidence presented did not establish reasonable suspicion

for the Vermilion Police Department to effectuate a stop of Appellant's vehicle. The stop and detention violated Defendant's rights afforded under the Fourth Amendment and Article I, Section 14 of the Ohio Constitution.

2. The Trial Court erred in not granting Defendant's Motion to Suppress as the evidence presented did not establish that the Vermilion Police had the requisite probable cause to arrest Defendant for a violation of R.C. 4511.19.

3. The Trial Court erred in not granting Defendant's Motion to Suppress when it relied on the existence of several traffic violations comprised of "marked lanes" infractions to support its determination of "reasonable suspicion" and "probable cause" as they relate to the stop, detention and arrest of Defendant for violations of R.C. 4511.19.

**Facts**

{¶ 3} On May 5, 2019, at about 2:30 a.m., appellant was driving a vehicle on Liberty Avenue in Vermilion, Erie County, Ohio, when he was stopped by Officer Leo Chandler of the Vermilion Police Department. Appellant was charged with marked lanes offense, a violation of Vermilion Codified Ordinance 432.08, operating a motor vehicle under the influence ("OVI"), a violation of Vermilion Codified Ordinance 434.01(a)(1)(A), and operating a motor vehicle with a prohibitive breath alcohol content, a violation of Vermilion Codified Ordinance 434.01(a)(1)(D).

{¶ 4} On June 12, 2019, appellant entered a plea of not guilty to the charges, and filed his motion to "Suppress and Quash Arrest, Evidence."  A suppression hearing was held on October 22, 2019, where Officer Chandler testified on behalf of the state and Adam Reyes testified on appellant's behalf.

{¶ 5} On November 19, 2019, the trial court issued a journal entry denying the motion to suppress.

{¶ 6} On January 7, 2020, appellant entered a no contest plea to OVI under Vermilion Codified Ordinance 434.01(a)(1)(A), and he was convicted and sentenced. The remaining charges were dismissed.  Appellant timely appealed the court's denial of his motion to suppress.

**Motion to Suppress and Suppression Hearing**

{¶ 7} In his motion, appellant sought an order from the trial court quashing his arrest and precluding the introduction of any evidence seized or obtained during his stop, detention, interrogation and arrest.  Appellant claimed there were no articulable facts which supported stopping and detaining him, as he disputed the alleged bad driving.  He further asserted the only evidence presented at the time of his stop and detention was the alleged lane violation he committed, so there was no probable cause to conduct an extensive search or charge him with anything other than a minor traffic violation.

{¶ 8} At the suppression hearing, the parties stipulated to the officer's body camera ("body cam") video of the stop and a video of Liberty Avenue ("Liberty video") made on appellant's behalf.  The parties also stipulated the officer was in a marked patrol

3.

unit and was in his uniform at the time of the stop, and that jurisdiction and venue were proper.

{¶ 9} The state called Officer Chandler, who testified to the following. He was trained at the police academy on the NHTSA (National Highway Traffic Safety Administration) manual and the different indicators of impairment, and was certified to perform and give field sobriety tests.

{¶ 10} On May 5, 2019, which was "Saturday night into Sunday morning," at about 2:30 a.m., the officer was driving a marked police vehicle, which was not equipped with a dash camera. While on routine parole or stationed somewhere, the officer started to follow appellant's car, which was driving eastbound on Liberty Avenue, near Sunnyside. Liberty is a four-lane road with one turn lane in the middle. The officer testified "I can tell you he - I know he was the only vehicle out there." The officer drove behind appellant for a distance of one-half of a mile to two miles, and observed appellant drifting in and out of his lane more than three times. As to the first marked lanes violation, appellant was "traveling eastbound on the inside lane of Liberty Ave. I believe it was near the * * * bridge. I observed * * * he drifted into the turn lane." The next time, "I believe it was near the Overlook/Driftwood Tavern area, drifted again over the line * * * one tire completely over the -- the lane -- the line." The third time, "I believe it was near German's, there was another one there where actually like almost half [of] the vehicle went over and brought it back. And then came back and that's when he began to

4.

switch lanes, didn't use the turn signal. And then halfway through * * * switching lanes he used a turn signal."

{¶ 11} On cross-examination, the officer recalled the marked lane violations were between "the turn lane and the right lane. * * * On the outside lane, yes sir." Also, the officer was asked if "you're saying that * * * that there were no cars between your car and [appellant's] during this period of time so you were able to observe him the entire period of time; is that correct?" The officer answered, "Yes, sir."

{¶ 12} The officer conducted a traffic stop and upon approaching the vehicle, smelled the odor of alcohol coming out of the vehicle and coming off of appellant and his breath. The officer observed appellant with glassy eyes and some slurred speech, and noted appellant's passenger had also been drinking. The officer removed appellant from the vehicle in order to perform field sobriety tests, and continued to smell a strong odor of alcohol. Appellant denied drinking. The officer administered the Horizontal Gaze Nystagmus ("HGN") test, which he performed pursuant to the NHSTA manual, and noticed six out of six clues. Then, the walk-and-turn test was conducted, where three clues were observed. The officer learned the test at the academy and out of the manual. Next, the one-leg stand test was performed, and at one point appellant began to lose his balance, sway and use his arms to regain his balance. The officer learned this test at the academy and out of the NHSTA manual. Officer Chandler told appellant "I believed he had too much to drink to be driving" and placed appellant under arrest. Appellant "became belligerent, didn't think he had drank too much, refused to turn around and

5.

needed to be told several times."  Once in the patrol car, appellant was transported to Amherst for a breathalyzer where he "submitted a breath sample of .166 BAC." Appellant was charged with OVI.

{¶ 13} Adam Reyes testified on appellant's behalf.  Reyes was 29 years old and had been friends with appellant since grade school.

{¶ 14} At about 11:00 p.m. on the night of the incident, Reyes and appellant met at Rudy's, a bar.  Reyes was not drinking but he saw appellant have two Rolling Rock beers.  Reyes had a burger to eat, but did not recall if appellant had anything to eat. Reyes and appellant left Rudy's at closing time, around 2:15 a.m.

{¶ 15} Reyes and appellant had parked next to each other in a parking lot across the street from Rudy's.  Reyes was driving a Kia Rondo, and no one was in the car with him.  Later, Reyes remembered that he was driving a Kia Forte.  Appellant was driving his brother's Jeep, and his brother was the passenger.   Reyes said appellant's brother had a beer or two.

{¶ 16} Reyes was driving on Liberty, with appellant in front of him.  They were headed back to Lorain, as they live in the same area.  About two minutes into the drive, Reyes noticed headlights in back of him.  The headlights were at a distance for a couple of miles.  The headlights then got closer and Reyes realized it was a cop.

{¶ 17} The police car pulled up close to Reyes' vehicle, and "within [a] couple [of] seconds he goes around me, jets forward, put the lights on and pretty much cuts me off and then pulls over my friend."  Reyes did not see anything unusual which would

6.

warrant appellant being pulled over. Reyes did not stop, he kept driving home, but he did call appellant's brother to see if everything was all right.

## Trial Court's Journal Entry

{¶ 18} On November 19, 2019, the trial court denied the motion to suppress. The court noted, inter alia, "Officer Chandler testified that he witnessed several traffic violations which were sufficient to establish that the stop was constitutionally valid." The court further observed "[t]he defendant called a witness, Adam Reyes, who stated that he was following the defendant after they left Rudy's Bar, and he did not believe the defendant committed any marked lanes violations. However, he admitted they had been friends since grade school. He also testified the defendant had two drinks." The court found the officer's testimony was more credible, and further found the officer had an objective, reasonable suspicion that the defendant had committed a traffic violation, so the stop was justified.

{¶ 19} As to whether the officer had reasonable suspicion to request the performance of field sobriety tests, the court looked at the totality of the circumstances. The court noted all of the factors observed by Officer Chandler during the stop created a reasonable suspicion for the administration of the field sobriety tests. The court found the stop was proper, and reasonable suspicion existed to allow the administration of field sobriety tests. The court further found, based on the officer's testimony and the body cam video, that the test results were admissible. Lastly, the court found there was probable cause to stop and arrest defendant for OVI.

## Standard on Appeal

{¶ 20} Appellate review of a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court decides a motion to suppress, it assumes the role of trier of fact and is in the best position to resolve questions of fact and to assess witness credibility. *Id.* A reviewing court is bound to accept the trial court's findings of fact if those findings are supported by competent, credible evidence. *Id.* An appellate court must then independently decide as a matter of law whether the trial court's conclusions satisfy the appropriate legal standard. *Id.*

## First Assignment of Error

{¶ 21} Appellant argues the trial court erred in failing to grant his motion to suppress as the evidence presented did not establish reasonable suspicion for the officer to stop appellant's vehicle. Appellant asserts the evidence presented at the suppression hearing shows the court's findings of fact are against the manifest weight of the evidence, and there was insufficient competent and credible evidence to deny the motion.

{¶ 22} Appellant observes the basis for the traffic stop was the officer's claim of three marked lane violations and a turn signal violation, and in order to properly evaluate and consider the officer's claims testimony, the Liberty tape showing the road appellant traveled immediately before the stop must be viewed. Appellant submits the Liberty tape depicts a poorly maintained road and "[t]he white lines delineating the two (2) east bound lanes of travel are virtually nonexistent" as the lines had not been painted in years.

8.

**{¶ 23}** Appellant contends the officer described that the turn signal violation occurred shortly before appellant left Vermilion's jurisdiction, which makes the violation even more suspect. Appellant acknowledges he was not cited for failing to use a turn signal. With respect to the marked lane violations, appellant argues "[l]ike other courts, this Court recognized that a driver violates R.C. 4511.33 when he or she travels completely *across* the centerline or fog line." Appellant further claims the "testimony fails to establish anything other than Defendant was moving between the two (2) lanes traveling eastbound on three (3) occasions * * * [and] it is not a violation of the 'marked lanes' statute or Ordinance to move between lanes of travel. Obviously, Defendant's vehicle did not move sufficiently to invoke the requirements of City Ordinance 432.13 requiring the use of a turn signal."

**{¶ 24}** Appellant notes the trial court summarily dismissed Adam Reyes' testimony and found the officer more credible, so "the Trial Court had to determine that Mr. Reyes is a flagrant liar * * * and was not even there." Appellant contends if the court had believed Reyes was present, "it calls into question all of the Officer's testimony as it is reliant upon his observations of Defendant's vehicle as if it was the only vehicle on the road."

**Law**

**Reasonable Suspicion**

{¶ 25} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, guarantee a person's right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). The United States Supreme Court has ruled that an investigatory traffic stop is constitutionally valid if the police officer has a reasonable and articulable suspicion that a motorist has violated the law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Ohio courts have followed this ruling. *See, e.g., State v. Swanson*, 6th Dist. Wood No. WD-05-065, 2006-Ohio-4798, ¶ 15. "The 'reasonable and articulable suspicion' analysis is based on the collection of factors, not on the individual factors themselves." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 11.

**Marked Lanes**

{¶ 26} Vermilion Codified Ordinance ("VCO") 432.08, "Driving Within Lanes or Continuous Lines of Traffic," is patterned after R.C. 4511.33, "Rules for driving in marked lanes." VCO 432.08 states in relevant part:

(a) Whenever any roadway has been divided into two or more clearly marked lanes for traffic or wherever traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

10.

(1) A vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

{¶ 27} In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, syllabus, the Supreme Court of Ohio held that "[a] traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." In *Mays*, the motorist argued "'R.C. 4511.33(A) does not prohibit leaving one's lane,'" but the court rejected this argument, finding the statute requires a motorist "to drive a vehicle entirely within a single lane of traffic." *Id.* at ¶ 15-16. The court noted the statute provides for certain situations in which a motorist "can cross a lane line without violating the statute," but a motorist having a possible defense "is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop." *Id.* at ¶ 17. The court held "when an officer could reasonably conclude from a person's driving outside [of] the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle." *Id.* at ¶ 20.

**Analysis**

{¶ 28} Upon review, we find the record contains competent, credible evidence which supports the trial court's conclusions that Officer Chandler had a reasonable suspicion that appellant committed a traffic violation, which justified the traffic stop.

11.

The record shows the trial court listened to the testimony presented at the suppression hearing and determined the officer's testimony was more credible than Adam Reyes' testimony. We are mindful that conflicting testimony was presented at the hearing, including the number of vehicles on the road prior to the traffic stop, and the officer's testimony that he observed appellant "drifting in and out of his lane, more than three times" as opposed to Reyes' testimony that he "didn't see anything unusual [about the way appellant was driving] that would warrant any pulling over." However, we defer to and accept the trial court's evaluation of the credibility of the witnesses, as that assessment is supported by competent, credible evidence.

{¶ 29} We further find, based on the totality of the circumstances, Officer Chandler's investigatory traffic stop of appellant's vehicle is constitutionally valid as the officer had a reasonable and articulable suspicion that appellant had violated VCO 432.08, by drifting in and out of his lane. We therefore find the trial court did not err when it denied appellant's motion to suppress with respect to the traffic stop, as the evidence established reasonable suspicion to effectuate a stop of appellant's vehicle. Accordingly, appellant's first assignment of error is not well-taken.

### Second Assignment of Error

{¶ 30} Appellant argues the trial court erred in failing to grant his motion to suppress on the basis that the officer lacked probable cause to arrest. Appellant notes the officer testified that after the stop, he approached appellant's vehicle and smelled the odor of alcohol "coming off" of appellant and appellant's breath, observed glassy eyes

and slurred speech. Appellant maintains slurred speech is not discernable in any manner on the body cam video.

{¶ 31} Appellant observes the officer conducted three field sobriety tests: HGN; walk and turn; and one-leg stand. Appellant notes the officer testified appellant performed the one-leg stand test well. As to the HGN and walk and turn tests, appellant takes issue with the officer's knowledge and understanding regarding certain aspects of the tests and standards associated with the tests.

{¶ 32} Appellant submits the body cam video supports his claim that there was no probable cause that he was driving while intoxicated to justify his arrest and detention. Appellant also contends when the totality of the circumstances are considered, there was no probable cause that he was driving while intoxicated.

### Law

### Probable Cause

{¶ 33} In order to determine whether the police had probable cause to arrest a person for driving under the influence, a reviewing court must consider whether, at the time of the arrest, "the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." (Citation omitted.) *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds* as stated in R.C. 4511.19(D)(4)(b). Thus, the reviewing court must assess the

13.

totality of the circumstances surrounding the arrest. *Id.* Probable cause to arrest does not have to be based, in whole or part, on the results of field sobriety tests. *Id.*

{¶ 34} R.C. 4511.19(D)(4)(b) provides that results from field sobriety tests are admissible in evidence "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered * * *." Evidence of the testing standard used in the field sobriety tests must be presented by the state in order for the court to find substantial compliance under the statute. *State v. Matus*, 6th Dist. Wood No. WD-06-072, 2008-Ohio-377, ¶ 21. "Part of the state's burden 'includes demonstrating what the NHTSA requirements are, through competent testimony and/or introducing the applicable portions of the NHTSA manual.'" (Citation omitted.) *Id.* Notwithstanding, the trial court may, upon request, take judicial notice of the NHTSA manual and standards, but if there is no such request, the applicable standard must still be established by the state. *Id.* at ¶ 23. If a trial court errs by failing to suppress the results of field sobriety tests, but probable cause to arrest is shown to exist without considering the test results, the error is harmless. *Id.* at ¶ 27.

### Analysis

{¶ 35} At the outset, we recognize that appellant raised a concern at the suppression hearing regarding the officer's knowledge of the standards related to the HGN and walk and turn tests. However, appellant did not assert at the trial court or here, except for the first time in his reply brief, that the test results were inadmissible because

the tests were not administered in substantial compliance with the testing standards, or that the state did not meet its burden of demonstrating the applicable NHTSA requirements. For the reasons that follow, it is not necessary for us to determine the admissibility of the test results.

{¶ 36} A review of the record shows Officer Chandler testified that on Saturday night into Sunday morning at about 2:30 a.m., he observed appellant's vehicle drifting in and out of his lane. After appellant's vehicle was stopped, the officer testified he smelled the odor of alcohol on appellant and his breath and observed glassy eyes and slurred speech. When asked, appellant denied drinking.

{¶ 37} We find the totality of these facts and circumstances provided Officer Chandler with adequate information, from a reasonably trustworthy source, to believe appellant was driving under the influence of alcohol. We further find this information was sufficient to cause a practical, prudent person to believe appellant was driving under the influence. We therefore conclude Officer Chandler had probable cause to arrest appellant for OVI based on the foregoing facts. While the trial court considered the field sobriety test results in its determination that probable cause existed, and those results may have been inadmissible due to the state's failure to meet its burden of establishing the applicable NHTSA standards, any error by the court in failing to suppress those results would be harmless. Since probable cause to arrest existed without considering the results of the field sobriety tests, we find the trial court did not err in denying appellant's motion to suppress. Accordingly, appellant's second assignment of error is not well-taken.

15.

**Third Assignment of Error**

{¶ 38} Appellant argues the trial court erred in not granting his motion to suppress when it relied on "marked lanes" infractions to support its determination of "reasonable suspicion" and "probable cause" to stop, detain and arrest appellant for violations of R.C. 4511.19. Appellant submits this assignment of error has been discussed in the other assignments of error, and is "being presented as an additional Assignment in support of Appellant's position as to the claim of improper driving."

{¶ 39} Upon review, appellant presented no different or novel arguments in this assignment of error, he merely set forth additional support for his other two assignments of error. As we have previously addressed the arguments included in this assignment, and in light of our disposition of appellant's first and second assignments of error, this assignment of error has been rendered moot. *See* App.R. 12(A)(1)(c). Accordingly, appellant's third assignment of error is not well-taken.

{¶ 40} The judgment of the Vermilion Municipal Court is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.