[Cite as *State v. Murray*, 2020-Ohio-45.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28373 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-2799 |
| | : | |
| KEVIN M. MURRAY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of January, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 3725 Pentagon Boulevard, Suite 270, Beavercreek, Ohio 45431
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Kevin Murray appeals his conviction for operating a motor vehicle while under the influence. He contends that the arresting officer had no basis for conducting a field sobriety test. He further contends that the officer lacked probable cause to arrest him because the officer improperly administered the horizontal gaze nystagmus (HGN) test. For the reasons that follow, we affirm.

## I.    Facts and Procedural Background

{¶ 2} On May 18, 2018, Ohio State Trooper Jason Hutchinson was on routine patrol driving northbound on Interstate 75. His dashboard camera was activated. At approximately 5:00 p.m., Hutchinson was traveling behind a dark pickup truck. As Hutchinson began to drive onto an exit ramp, he noticed a vehicle in front of the truck enter the exit ramp "a little late" without signaling. Tr. p. 12. Hutchinson then observed the vehicle cross over the lane line onto the shoulder of the exit ramp. The vehicle then quickly moved to the left, through the right lane, and entered the middle lane of the ramp directly in front of Hutchinson's cruiser. The vehicle proceeded to make a slow left turn off the ramp and onto the right shoulder of National Road. The vehicle then came back into the lane of travel directly in front of the cruiser. At this point, Hutchinson initiated a traffic stop.

{¶ 3} As Hutchinson approached the passenger side window of the vehicle, he saw the driver, later identified as Murray, fumbling through some papers. Without any prompting, Murray gave Hutchinson a document that he claimed was his registration. Hutchinson informed him that the document was his insurance card. Hutchinson noted the smell of alcohol emanating from the vehicle. He also noted that Murray's speech

was slow and slurred. When asked, Murray denied having ingested alcohol. Murray then indicated that he had just been released from the hospital and stated that "they had IV's all over me." State's Exh. 1 (dashboard camera video). Hutchinson asked Murray if he was on any medications, and Murray stated that he was taking medications. Hutchinson then asked Murray whether he was permitted to drive while taking the medications. Murray again indicated that he had been in the hospital and that a new medication had been prescribed. Hutchinson again asked whether Murray was permitted to drive while on the medication, and Murray stated that he was. Murray then stated that he was instructed to determine the medication's effect upon him before driving. At this point, Hutchinson asked Murray to step out of his vehicle and stand by the front of the cruiser. Hutchinson noted that Murray's eyes were "glossy." Tr. p. 20.

{¶ 4} Once removed from the vehicle, Hutchinson detected an odor of alcohol emanating from Murray. Murray again denied ingesting alcohol that day. He then stated that he had consumed alcohol the previous day, when, supposedly, he had been hospitalized, and that he was on his way to purchase more alcohol. Hutchinson asked Murray to remove his glasses and asked Murray whether he had any problems with his eyes. Murray denied any issues with his eyes and acknowledged that he had no difficulty following objects with his eyes. Hutchinson then administered the HGN test and determined that Murray had six points, or clues, which is the maximum number for the test, indicating impairment.

{¶ 5} Thereafter, Hutchinson observed that Murray had bruising on his body and that he was shaking. Hutchinson asked Murray if he had anything wrong with his legs, and Murray replied that he was shaky and had just been released from a ten-day

hospital/rehab stay. Based upon Murray's condition, Hutchinson decided not to administer the walk-and turn or the one-leg stand test, because he did not think Murray could perform them. Murray was then placed under arrest. Hutchinson transported Murray to the State Highway Post where a blood alcohol content (BAC) test was administered. The test, which was conducted at 6:15 p.m., indicated a blood alcohol content of .151.

{¶ 6} On November 8, 2018, Murray was indicted as follows: Count I, operating a vehicle under the influence (OVI) (prior felony) in violation of R.C. 4511.19(A)(1)(d) and (G)(1)(e); Count II, operating a vehicle under the influence (prior felony) in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(e); Count III, operating a motor vehicle while under the influence in violation of R.C. 4511.09(A)(1)(d) and (G)(1)(d); and Count IV, operating a vehicle while under the influence in violation of 4511.19(A)(1)(a) and (G)(1)(d). On December 14, 2018, Murray filed a motion to suppress and a motion to dismiss counts I and II. In support of the motion to dismiss, Murray noted that the State, in charging him with OVI with a prior felony, had mistakenly relied upon a prior conviction in Montgomery C.P. No. 2004 CR 3792, which involved Kevin L. Murray rather than this defendant Kevin M. Murray. The State acknowledged the mistake and the trial court dismissed counts I and II. The matter proceeded to a hearing on the motion to suppress. Following the hearing, the trial court overruled the motion.

{¶ 7} On April 4, 2019, Murray entered a plea of no contest to Count III, and as part of the plea agreement, the State dismissed Count IV. However, the trial court later vacated the plea upon learning that Murray had been intoxicated at the time of the plea.[1]

---

[1] According to the record, approximately 20 minutes after entering his plea, Murray met

Thereafter, a second plea hearing was conducted and Murray again entered a plea of no contest to Count III; Count IV was dismissed. Murray was found guilty and sentenced to community control, including 90 days in jail. Murray appeals from his conviction, challenging the denial of his motion to suppress.

## II.     Reasonable Suspicion Analysis

{¶ 8} Murray's first assignment of error states:

THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY FOR OVI WHEN THE TROOPER LACKED REASONABLE SUSPICION TO PERFORM FIELD SOBRIETY TESTS ON APPELLANT.

{¶ 9} Murray contends that the trial court erred in concluding that the arresting officer had a reasonable, articulable suspicion to justify conducting the HGN field test.

{¶ 10} Although not stated as such, Murray's argument necessarily implies that the trial court erred by failing to grant his motion to suppress. Thus, we begin with the standard of review regarding a motion to suppress. An appellate court's review of a suppression decision involves a mixed question of law and fact. *State v. Lennon*, 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, ¶ 45, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In deciding a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." (Citation omitted.) *Burnside*, ¶ 8. Thus, a

---

with his pretrial services officer, who noted that he had a strong odor of alcohol. The officer conducted a blood alcohol content test which showed he "tested at .307." Tr. p. 86. The trial court noted that Murray "seemed quite functional" at the time of the plea. *Id.*

reviewing court "must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. * * * Accepting the facts as true, the appellate court then must independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* *See also State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100. With this standard in mind, we now turn to the issue of the propriety of the initial traffic stop.

{¶ 11} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." (Citation omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8. "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." (Citations omitted.) *Id.* "Further, '[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *Id.*, quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), at paragraph one of the syllabus. "Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.*

{¶ 12} In Ohio, it is well established that an officer may stop a motorist upon his or her observation of a traffic violation. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *Id.* at 9. Specific to this case, "a traffic stop is constitutionally valid when a

law enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *Mays* at ¶ 25. Here, Hutchinson testified and the dashboard video confirmed that he observed Murray enter the exit ramp late and without a signal. Hutchinson then observed Murray cross onto the right shoulder as he traveled up the exit ramp. Murray then shifted back into the right-hand lane before switching into the middle lane immediately in front of Hutchinson's cruiser. After making a slow left turn off the ramp, Murray's entire vehicle entered the right shoulder of National Road. The vehicle then moved left and entered the right-hand lane immediately in front of the cruiser. We agree with the trial court's determination that Hutchinson made a constitutionally valid stop under these circumstances.

{¶ 13} However, the mere fact that a driver has been lawfully stopped does not permit an officer to administer field sobriety tests unless this invasion of privacy is separately justified by a reasonable suspicion based upon articulable facts that the driver is impaired. *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 11 (2d Dist.). "Thus, an analysis of an investigatory stop leading to an arrest requires careful attention to each stage of the detention in order to make sure that the extent of the intrusion represented by each stage is warranted by the officer's reasonable and articulable suspicion at that point." *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, *3 (Mar. 24, 2000).

{¶ 14} Following the stop, Hutchinson observed Murray fumbling with papers before voluntarily offering a document he identified as his registration. Hutchinson noted the document was actually Murray's proof of insurance. Hutchinson also noted the odor

of alcohol coming from the vehicle and then, after Murray's removal from the vehicle, from Murray. Hutchinson noted that Murray's speech was slow and slurred. Murray additionally admitted that he was taking a new medication and that he was instructed to determine its effect upon him before driving.

{¶ 15} In light of this admission, Murray's traffic violations, the smell of alcohol emanating from the vehicle and later from Murray's person, his slurred speech, his lack of dexterity, and the misidentification of his insurance card, we cannot find that the trial court erred in concluding that Hutchinson had a reasonable, articulable suspicion of an OVI offense justifying the administration of the field sobriety test.

{¶ 16} Accordingly, the first assignment of error is overruled.

### III.    Probable Cause Analysis

{¶ 17} Murray's second assignment of error is as follows:

THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY FOR OVI

BECAUSE THE TROOPER LACKED PROBABLE CAUSE TO ARREST

APPELLANT AFTER FAILING TO PROPERLY ADMINISTER ONLY ONE

FIELD SOBRIETY TEST, THE HGN.

{¶ 18} Murray contends that the trial court erred in finding that Hutchinson had probable cause to place him under arrest.   In support, Murray claims Hutchinson did not perform the HGN test in substantial compliance with the 2013 National Highway Traffic Safety Administration ("NHTSA") standards.

{¶ 19} The results of field sobriety tests are admissible at trial if the State presents clear and convincing evidence that the officer administered the tests in substantial

compliance with the NHTSA standards. R.C. 4511.19(D)(4)(b). The State may satisfy its burden without explicit testimony from the officer that he or she substantially complied with NHTSA standards in administering the tests. *State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶ 53. The State is also not required to actually introduce the NHTSA manual or testimony concerning the standards as long as the record demonstrates, if only by inference, that the court took judicial notice of the NHTSA standards.[2] *Id.* Evidence showing that the pertinent rules and regulations have been followed in conducting field sobriety tests, if unchallenged, constitutes a sufficient foundation for admission of the test results. *State v. Murray*, 2d Dist. Greene No. 2002-CA-10, 2002-Ohio-4809, ¶ 11. But, when a defendant sufficiently challenges the evidence, the State is required to present more particular evidence of compliance. *Id.*

{¶ 20} The NHTSA manual sets forth guidelines and mandates for performing the HGN test. To perform the HGN test, an officer holds a stimulus (generally a pen) 12 to 15 inches away from an individual's face, and the individual is directed to follow the stimulus with his or her eyes. The first portion of the test determines if the eyes have a lack of smooth pursuit, i.e., do not follow the stimulus or bounce around. The second part of the test measures sustained nystagmus, bouncing or jerking of the eyes, at maximum deviation, and the third is onset of nystagmus prior to 45 degrees. The NHTSA protocol articulates certain approximate and required time requirements for the three phases of the exam. Specifically, when checking for distinct nystagmus at maximum deviation, the examiner must hold the stimulus at maximum deviation for a minimum of

---

[2] The parties submitted an electronic version of the NHTSA's HGN standards as a Joint Exhibit.

four seconds. But when checking for smooth pursuit, the time to complete the tracking of one eye should take approximately four seconds, and when checking for the onset of nystagmus prior to 45 degrees, the tracking time left to right should also be approximately four seconds.

{¶ 21} At the suppression hearing, Hutchinson testified that he received alcohol detection training by the Ohio State Highway Patrol Academy. He also testified that as a State Highway Patrol Officer, he receives alcohol detection training updates. Hutchinson explained that the HGN test training is conducted pursuant to the NHTSA standards and described how to conduct the test and the clues that indicate intoxication. The administration of the test can be seen on the dashboard camera video. Hutchinson testified that in conducting the test on Murray, he first ensured that both of Murray's eyes were equally tracking a stimulus in order to rule out any type of head injury. Hutchinson then explained in detail how he administered the HGN test to Murray, including a description of the six clues that indicate whether a person is impaired and how appellant displayed all six indicators of intoxication.[3] Hutchinson testified that he observed in both eyes lack of smooth pursuit, nystagmus at maximum deviation, and onset of nystagmus before 45 degrees. He testified that he performed each test twice on each eye, and that conducting the test took approximately 60 seconds. This testimony, in most respects, is corroborated by Exhibit I.

{¶ 22} Murray's challenges to the HGN test on appeal are as follows: (1) that Hutchinson "failed to demonstrate * * * he gave the proper instructions to Murray prior to

---

[3] Under the HGN protocol, four out of six clues indicates impairment, and, thus, a failed test.

commencement of the HGN test"; (2) Hutchinson "performed the entire HGN test 11 seconds faster than the minimum time required pursuant to NHTSA guidelines"; and (3) Hutchinson's "testimony indicates that he moved too quickly in the administration of the three individual portions of the HGN test."   On the whole, we disagree.

{¶ 23} The HGN protocol advises the test administrator to instruct the subject to keep his or her head still and to follow the stimulus with his or her eyes only.   Murray suggests Hutchinson did not provide this instruction, but our review of the video indicates otherwise.   Hutchinson adequately instructed Murray concerning the testing procedure, and the record does not indicate that Murray was unable to perform the test.   Further, Hutchinson testified that Murray's "equal pupil size and equal [stimulus] tracking rule[d] out any type of head injury" that could compromise the test.   In short, there is nothing in the record to suggest that the HGN test results were affected by Murray's physical condition or inadequate instruction.

{¶ 24} Without any case citations, Murray asserts that "case law" establishes the minimum time to conduct the HGN test is 68 seconds.   Murray asserts that Hutchinson completed the test in 57 seconds, and, from this, argues a failure of substantial compliance.   But, as noted by the State, the full testing protocol includes the discretionary vertical gage nystagmus (VGN) test,[4] which Hutchinson did not perform. The record does not establish how long it takes to perform the VGN test, which makes it impossible to conclude that the 11 second difference between 68 seconds and 57 seconds indicates a failure of substantial compliance.   Further, and more importantly, the

---

[4] Assuming impairment has otherwise been demonstrated, the VGN test is administered to determine the extent of the impairment.

HGN standard does not include a time of completion guideline or mandate. Instead, there are guidelines or mandates regarding how long the stimulus needs to be held during each portion of the test. Based upon our review of the video, we conclude that the time it took Hutchinson to complete the test (approximately 60 seconds) did not demonstrate a lack of substantial compliance.

{¶ 25} The HGN standards articulate time guidelines for the "smooth pursuit" and "nystagmus onset before 45 degrees" testing. These guidelines set forth the approximate speed at which the stimulus should be moved and the approximate amount of time the stimulus should be held. The video reveals substantial compliance with these guidelines.

{¶ 26} Turning to the "nystagmus at maximum deviation" test, the HGN standard dictates that the stimulus must be held for at least four seconds at maximum deviation. Hutchinson arguably did not hold the stimulus for the mandated 4 seconds. But even if the maximum deviation result were removed from the analysis, the record reflects 4 impairment clues, which was sufficient to establish probable cause to arrest for an OVI violation. *State v. Taylor*, 2d Dist. Montgomery No. 25405, 2014-Ohio-2809, ¶ 8, fn. 3. Thus, assuming Hutchinson did not substantially comply with the "nystagmus at maximum deviation" test, the record nonetheless allows a substantial compliance determination.

{¶ 27} We conclude that the HGN test, in conjunction with Murray's driving, his slow and slurred speech, the odor of alcohol, his glossy eyes, the fumbled with and misidentified insurance card, and his admission to taking a medication that might affect his driving ability provided probable cause to arrest Murray for an OVI offense.

{¶ 28} The trial court did not err in denying Murray's motion to suppress. Thus,

the second assignment of error is overruled.


## IV.    Conclusion

{¶ 29} Both of Murray's assignments of error being overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


FROELICH, J. and HALL, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
Thomas M. Kollin
Hon. Mary Katherine Huffman