[Cite as *State v. Aiken*, 2021-Ohio-3503.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                        Court of Appeals No. F-21-005

    Appellee                                     Trial Court No. TRC 2001960

v.

Forrest C. Aiken                                   **DECISION AND JUDGMENT**

    Appellant                                    Decided:  September 30, 2021

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney,
for appellee.

Autumn D. Adams, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Forrest Aiken, appeals the judgment of the Fulton County Court, Western District, sentencing him to two years of community control after he pled no contest to one count of operating a vehicle under the influence of alcohol.  Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On January 4, 2020, at 2:44 a.m., appellant was driving on County Road 14 in Dover Township, Fulton County, when he was stopped by Travis Pennington of the Fulton County Sheriff's Office. Following the administration of field sobriety tests and a breathalyzer test, appellant was cited for operating a vehicle under the influence in violation of R.C. 4511.19(A)(1)(d).

{¶ 3} Approximately seven weeks later, on February 21, 2020, appellant filed a motion to suppress, in which he argued, inter alia, that the field sobriety tests administered in this case failed to comply with standardized procedures set forth in the National Highway Traffic Safety Administration's ("NHTSA") Full Instructor Manual and thus the results of those tests could not be used to establish probable cause to believe appellant was intoxicated. The matter proceeded to a hearing on appellant's motion to suppress on July 29, 2020.

{¶ 4} According to deputy Pennington's suppression hearing testimony, he stopped appellant after he observed appellant proceed through a stop sign and into an intersection without stopping. Pennington indicated that appellant applied his brakes in an attempt to stop, causing his tires to lock up. However, appellant was traveling too fast for his vehicle's brakes to bring the vehicle to a complete stop without proceeding into the intersection.

{¶ 5} From his position in a nearby parking lot, Pennington observed appellant accelerate "at a high rate of speed" after proceeding through the intersection. Pennington

2.

then attempted to follow appellant. As Pennington approached the intersection, he observed appellant's vehicle veer off the right side of the road "past the grass and the ditch into a field." Appellant's vehicle then "spun around and was partially off the left side of the roadway in the southbound lane on County Road 14." During the suppression hearing, a video of Pennington's subsequent encounter with appellant was admitted. The video depicts appellant's vehicle positioned partially on County Road 14 as described above.

{¶ 6} Pennington subsequently approached appellant's vehicle from the driver's side and began speaking with appellant. When asked about his failure to stop before entering the intersection, appellant explained that he had recently replaced the brakes on his vehicle. Meanwhile, Pennington noticed that appellant's eyes were glossy and he detected an "odor of intoxicants coming from the vehicle." Pennington then asked appellant if he had been drinking, and appellant responded in the negative.

{¶ 7} Based upon his observation of appellant's eyes and the odor of intoxicants, Pennington asked appellant to exit the vehicle. Appellant complied, and Pennington began to administer field sobriety tests. During the suppression hearing, Pennington testified that he was previously trained to perform the field sobriety tests that were administered during the traffic stop. Further, he verified that he administered the tests in a manner that complied with standardized procedures promulgated by the NHTSA.

{¶ 8} The first test administered by Pennington was the horizontal gaze nystagmus test. Initially, Pennington instructed appellant to stand with his hands and arms at his

3.

side and focus his eyes upon Pennington's fingertip without turning his head as Pennington moved his finger from side to side at a distance of seven to ten inches from appellant's face. As he performed the test, Pennington watched appellant's eyes, looking for a "lack of smooth pursuit * * * at maximum deviation and lack of smooth pursuit at * * * prior to 45 degrees." In so doing, Pennington noticed that appellant's eyes were involuntarily jerking as Pennington moved his finger from left to right. Pennington also observed nystagmus in both eyes at maximum deviation, but did not observe nystagmus prior to that point. Based on his observations, Pennington concluded that appellant was legally intoxicated.

{¶ 9} On cross examination, Pennington was pressed for further details as to how far he moved his finger from left to right. Pennington responded that he moved his finger from side to side at a distance of "just past shoulder width." Pennington was also asked about the angle at which he moved his finger relative to the center of appellant's face and how long he held his finger at maximum deviation. Pennington explained that he moved his finger in a straight line, holding it at maximum deviation for two seconds.

{¶ 10} After administering the horizontal gaze nystagmus test, Pennington again asked appellant whether he had consumed any alcohol. At this point, appellant acknowledged that he had consumed alcohol four hours prior to the traffic stop.

{¶ 11} Pennington then proceeded to administer the second field sobriety test, namely the walk and turn test. Pennington explained the instructions to appellant and demonstrated how to perform the test. On cross examination, Pennington testified that he

4.

instructed appellant to stand with his feet placed in a heel-to-toe position and take nine heel-to-toe steps down and back along a line with his arms at his side. Pennington also instructed appellant to count his steps aloud as he completed the test. As appellant performed the test, Pennington witnessed appellant step off the line multiple times, use his arms for balance, fail to complete all of his steps, and fail to properly count his steps. According to Pennington, appellant's performance during the walk and turn test was indicative of impairment.

{¶ 12} The one leg stand test was the third and final field sobriety test that Pennington administered. As with the walk and turn test, Pennington demonstrated for appellant how to complete the test. During cross examination, Pennington stated that the clues indicative of impairment from this test include using the arms for balance, failing to count aloud, and resting your foot prior to being told to do so. Appellant was able to perform the test, but only after holding his arms to the center of his chest for balance and putting his foot down without being told to do so. According to Pennington, raising the arms higher than six inches signified appellant's need to balance himself and thus constituted a failure.

{¶ 13} At the conclusion of the foregoing field sobriety tests, Pennington believed he had probable cause to arrest appellant for operating his vehicle while under the influence of alcohol. Consequently, Pennington placed appellant under arrest, read him his *Miranda* rights, and transported him to the police station for a breathalyzer test.

5.

{¶ 14} Once at the station, Pennington read a "BMV 2255 form" for appellant in the presence of another officer, Sergeant Waxler. Appellant then requested to use the restroom. Pennington granted appellant's request, and then he and Waxler accompanied appellant to the restroom. Pennington testified that a deputy was with appellant while he was in the restroom. Further, Pennington stated that appellant, who was in Pennington's custody at all times, did not ingest anything during the time period between his arrest and the administration of a breathalyzer test.

{¶ 15} After returning from the restroom, appellant consented to a breathalyzer test. Pennington administered the breathalyzer test with an Intoxilyzer 8000, which Pennington stated he was certified to use. After the machine calibrated itself, Pennington obtained two breath samples from appellant. The first and second sample registered a blood alcohol level of .131 and .126, respectively. Based upon these results, Pennington issued appellant a citation for operating a vehicle under the influence in violation of R.C. 4511.19(A)(1)(d).

{¶ 16} At the conclusion of Pennington's testimony at the suppression hearing, the trial court took the matter under advisement. On August 5, 2020, the trial court issued its decision on appellant's motion to suppress. Relevant to this appeal, the trial court found that Pennington substantially complied with NHTSA standardized procedures with respect to his administration of field sobriety tests. Based upon the results of those tests, the trial court concluded that Pennington had probable cause to believe that appellant's ability to operate his vehicle was noticeably impaired by his consumption of alcohol.

6.

Thus, the court ruled that Pennington was justified in arresting appellant for operating his vehicle under the influence of alcohol, and denied appellant's motion to suppress.

{¶ 17} On January 20, 2021, appellant appeared before the trial court for a change of plea hearing. He ultimately pled no contest to the sole count of operating his vehicle under the influence of alcohol, was found guilty of said offense, and was sentenced to two years of community control. Thereafter, appellant filed his timely notice of appeal.

## B. Assignment of Error

{¶ 18} On appeal, appellant assigns the following error for our review:

> The Trial Court erred in denying Appellant's motion to suppress as the Deputy did not have probable cause to arrest Appellant on suspicion of OVI and the results of the breathalyzer must be suppressed as fruit of the poisonous tree.

## II. Analysis

{¶ 19} In his sole assignment of error, appellant argues that the trial court erred in denying his motion to suppress.

{¶ 20} Our review of the trial court's denial of appellant's motion to suppress "presents a mixed question of law and fact." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent credible evidence, and "independently determine, without

7.

deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Wesson* at ¶ 40, quoting *Burnside* at ¶ 8.

{¶ 21} At the outset, we note that appellant does not challenge the legal basis for the traffic stop that was initiated by Pennington after he observed appellant commit several traffic violations. Rather, appellant contends that Pennington lacked probable cause to arrest him for operating his vehicle under the influence of alcohol, and bases his conclusion exclusively on the argument that the field sobriety tests that Pennington used to establish probable cause were not conducted in accordance with the NHTSA manual.

{¶ 22} In order to determine whether Pennington had probable cause to arrest appellant, we must consider whether, at the time of the arrest, Pennington "had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that [appellant] was driving under the influence." (Citation omitted.) *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds* as stated in R.C. 4511.19(D)(4)(b). Importantly, we have noted that "[p]robable cause to arrest does not have to be based, in whole or part, on the results of field sobriety tests." *State v. Masin*, 6th Dist. Erie No. E-20-004, 2020-Ohio-6780, ¶ 33, citing *Homan* at 427.

{¶ 23} Here, appellant's probable cause argument is based upon the assumption that the results of the field sobriety tests provided the exclusive basis for arresting him for operating his vehicle under the influence of alcohol. Rather than considering the totality of the circumstances, including the facts that gave rise to Pennington's decision to

8.

conduct field sobriety tests in the first place, appellant focuses only on Pennington's conformity with established NHTSA field sobriety procedures. However, the arrest that took place in this case was supported by more than just appellant's inability to successfully complete field sobriety tests.

{¶ 24} At the suppression hearing, Pennington testified that he observed appellant drive through an intersection without stopping at the stop sign. Pennington explained that appellant's tires squealed as he attempted to stop. According to Pennington, appellant was unable to stop because of the rate of speed at which he approached the intersection. Thereafter, Pennington observed appellant rev up his engine and accelerate uncontrollably, causing his vehicle to veer off the right side of the road "past the grass and the ditch into a field." Appellant's vehicle then "spun around and was partially off the left side of the roadway in the southbound lane on County Road 14." During his initial encounter with appellant (prior to the administration of field sobriety tests), Pennington detected an odor of alcohol emanating from appellant's person, and noticed appellant's eyes were glossy.

{¶ 25} As already noted, probable cause to arrest a defendant for operating a vehicle under the influence of alcohol requires information sufficient to cause a prudent person to believe that the defendant was driving under the influence. Here, appellant's erratic driving, paired with Pennington's detection of an odor of alcohol and appellant's glossy eyes, is information that was sufficient to warrant Pennington in believing that appellant was driving under the influence of alcohol. *See State v. Panzeca*, 1st Dist.

9.

Hamilton Nos. C-190474, C-190475, 2021-Ohio-2905, ¶ 16, quoting *Cleveland v. Giering*, 2017-Ohio-8059, 98 N.E.3d 1131, ¶ 30 (8th Dist.) ("Field-sobriety tests are not required in order to obtain an OVI conviction. * * * To prove impairment, the state can rely on 'physiological factors such as slurred speech, bloodshot eyes, and the odor of alcohol.'"). As such, probable cause to arrest appellant was established prior to, and independent of, Pennington's decision to conduct field sobriety tests.

{¶ 26} In its decision denying appellant's motion to suppress, the trial court examined the merits of appellant's argument concerning Pennington's administration of the field sobriety tests. Since the trial court's probable cause determination was based largely upon its conclusion that Pennington substantially complied with NHTSA guidelines in conducting the field sobriety tests in this case, we will examine the merits of appellant's challenge to the admissibility of the field sobriety tests notwithstanding our determination that appellant's arrest was supported by probable cause even without field sobriety testing.

{¶ 27} Results from field sobriety tests "are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 11, citing R.C . 4511.19(D)(4)(b). For the results to be admissible, a proper foundation must be laid as to "the administering officer's training and ability to administer the tests and the actual technique he or she used to administer the tests." *State v. Boles*, 2020-Ohio-4485, 158 N.E.3d 1013, ¶ 15 (2d

10.

Dist.), citing *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28. The state's burden of proof as to the admissibility of the results of field sobriety tests "'is not an onerous one'; 'general testimony that all pertinent rules and regulations had been followed in conducting the defendant's test, if unchallenged, would amount to a sufficient foundation for the admission of the results.'" *Id.*, quoting *State v. Murray*, 2d Dist. Greene No. 2002-CA-10, 2002-Ohio-4809, ¶ 11.

{¶ 28} In this case, Pennington testified that he was trained to perform the field sobriety tests that were administered during the traffic stop. Further, Pennington indicated that the field sobriety tests that were administered in this case were conducted in a manner that complied with the standardized procedures promulgated by the NHTSA. He went on to explain the manner in which he performed the tests, and indicated that he instructed appellant on how to perform the tests before asking appellant to do so. During cross examination, appellant challenged Pennington's assertions, pressing Pennington for details as to how he conducted the field sobriety tests and what clues he was looking for while appellant completed the tests.

{¶ 29} As he did in his motion to suppress and during the suppression hearing, appellant now takes issue with the precise manner in which the field sobriety tests were performed in this case. For example, appellant argues that Pennington should have used a pen instead of his finger to conduct the horizontal gaze nystagmus test, should have held his finger at a distance 12-15 inches from appellant's face, not seven to ten inches as was done by Pennington in this case, should have provided a straight line for the walk

11.

and turn test using a curb or a piece of tape, and should have asked appellant if he had any physical problems or disabilities before beginning the one leg stand test. At most, the examples provided by appellant in his brief and in the proceedings below call into question Pennington's strict compliance with the NHTSA manual. However, admissibility of the results of the field sobriety tests hinges upon *substantial* compliance with the NHTSA manual, not strict compliance. Having reviewed the entire record, including Pennington's testimony detailing the specific manner in which he conducted the tests in this case and noting the tests were conducted in accordance with his training on the NHTSA field sobriety testing guidelines, we find that Pennington substantially complied with the NHTSA manual.

{¶ 30} Appellant also challenges the admissibility of the results of the breathalyzer test conducted in this case. He argues that Pennington improperly administered the test by failing to observe appellant for a period of at least 20 minutes prior to the test, as required under the operational checklist for an Intoxilyzer device.

{¶ 31} Notably, appellant's breathalyzer test was administered *after* he was arrested. Therefore, whether the breathalyzer test results are admissible or not has no bearing on whether Pennington possessed the requisite probable cause to arrest appellant, which is the argument appellant advances in his sole assignment of error. Moreover, we find no merit to this argument for the following reasons.

{¶ 32} In order to demonstrate substantial compliance with the 20-minute observation period that applies to Intoxilyzer testing devices, the state may introduce

12.

"evidence that during the 20 minutes before the breath test the defendant did not ingest anything that might skew the test result." *State v. Tenney*, 2d Dist. Montgomery No. 24999, 2012-Ohio-3290, ¶ 7, citing *State v. Adams*, 73 Ohio App.3d 735, 740, 598 N.E.2d 176 (2d Dist.1992). "'A witness who testifies to that foundational fact is not required to show that the subject was constantly in his gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or improbable.'" *Id.*, quoting *Adams* at 740.

{¶ 33} During the suppression hearing, Pennington explained that appellant was under his observation from the time of the traffic stop onward. Based upon the video recording of Pennington's encounter with appellant, the length of time that passed between the initiation of the traffic stop and the submission of the breathalyzer samples easily exceeded 20 minutes. During this time, appellant used the restroom under the supervision of a deputy. Pennington testified that appellant did not ingest anything during the time period between his arrest and the administration of the breathalyzer test, again a period of time that was greater than 20 minutes. On this record, we find no merit to appellant's claim that Pennington failed to observe the 20-minute observation period prior to conducting the breathalyzer test, and we therefore reject appellant's argument that the results of the breathalyzer test were inadmissible on that basis.

{¶ 34} In sum, we find that Pennington had probable cause to believe appellant was operating his vehicle under the influence of alcohol after perceiving appellant's

13.

erratic driving, the odor of alcohol coming from appellant's person, and appellant's glossy eyes. As such, the record reflect there was probable cause to arrest appellant without conducting field sobriety tests. Notwithstanding this conclusion, we further find that Pennington substantially complied with NHTSA guidelines when he conducted the field sobriety tests, the results of which provided further evidence of appellant's intoxication and an additional basis for probable cause.

{¶ 35} Accordingly, appellant's sole assignment of error is not well-taken.

### III. Conclusion

{¶ 36} In light of the foregoing, the judgment of the Fulton County Court, Western District, is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

Gene A. Zmuda, P.J. _____

Myron C. Duhart, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.