[Cite as *State v. Ruffin*, 2024-Ohio-5626.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-23-058

      Appellee                             Trial Court No. 2022 CR 0550

v.

Alan F. Ruffin                                   **DECISION AND JUDGMENT**

      Appellant                             Decided:   November 27, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Joseph Sobecki, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Alan Ruffin appeals the judgment of the Wood County Court of

Common Pleas, convicting him following a plea of no contest to two counts of operating

a vehicle under the influence of alcohol.  Ruffin contends that the trial court erred in

denying his motion to suppress evidence from his traffic stop and arrest.  Because the

officer had reasonable suspicion to administer field sobriety tests and probable cause to

arrest Ruffin on suspicion of operating a vehicle under the influence, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On December 22, 2022, the Wood County Grand Jury indicted Ruffin on one count of operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(d), a felony of the fourth degree, and one count of OVI in violation of R.C. 4511.19(A)(2)(a), (A)(2)(b), and (G)(1)(d), a felony of the fourth degree. Ruffin was granted until March 15, 2023, to file any pretrial motions. On March 16, 2023, he filed his motion to suppress evidence, arguing that there was no reasonable suspicion to initiate field sobriety testing, that the field sobriety tests were not administered in substantial compliance with NHSTA standards, and that there was no probable cause for his arrest.

{¶ 3} Prior to the suppression hearing being held, Ruffin filed a motion on March 27, 2023, seeking leave to file further pretrial motions once he receives requested evidence from the State, including, inter alia, "Calibration, maintenance, and use records for all chemical testing machines used by the Northwood Police Department or located at the Wood County Detention Center."

{¶ 4} The suppression hearing was held on May 19, 2023, which revealed the following facts. At approximately 1:00 a.m. on November 30, 2022, Ruffin was involved in an automobile accident with a semi-truck in a construction zone on northbound Interstate 75 in Wood County, Ohio. Officer Aaron Hunt of the Northwood Police

2.

Department responded to the scene. Hunt met with another responding officer from the Rossford Police Department, who informed him of a "smell" in Ruffin's car. Video from Hunt's body-worn camera showed that upon his arrival, he observed damage to both the left and right sides of Ruffin's vehicle. As Hunt was looking at the damage, Ruffin exited his car and walked to the rear also to look at the damage. Hunt asked for Ruffin's license, which Ruffin provided. Hunt then asked for proof of insurance. Ruffin opened the passenger door and looked through the glove box to find the proof of insurance.

{¶ 5} Hunt asked what happened, and Ruffin described that the semi-truck tried to merge into the left lane where Ruffin already was. He stated that the two vehicles collided. Hunt then asked Ruffin how much he had to drink that night because he could smell the alcohol coming off his breath. Ruffin responded, "that ain't got nothing to do with it." At that point, Ruffin's countenance changed, and he appeared defeated and resigned to his belief that he was going to be cited for OVI.

{¶ 6} Hunt asked Ruffin to move to a spot further off the roadway, but Ruffin moved to the back of his car and refused to go any further. While standing at the back of his car, Ruffin was facing the semi-truck, which had its hazard lights turned on. When Hunt asked if he had any problems with his eyes, Ruffin responded that he had glaucoma. Hunt proceeded to administer a horizontal gaze nystagmus ("HGN") test. He instructed Ruffin to follow the tip of his pen with his eyes and keep his head still. When he moved the pen to the outer edges of Ruffin's periphery, Hunt commented that Ruffin was not following the pen all the way. Ruffin responded that "you going to do it anyway." Hunt

3.

testified that he observed four out of six indicators for intoxication during the HGN test, and that he could not observe the final two because Ruffin did not follow the pen to the edge of his periphery.

{¶ 7} Hunt then offered additional field sobriety tests, which Ruffin said he would love to do but that they were set up for him to fail. Hunt eventually instructed Ruffin to walk in a straight line heel to toe. Ruffin refused to participate in the test.

{¶ 8} Hunt then placed him under arrest. He explained that his determination of probable cause was based upon the odor of alcohol, Ruffin's glassy eyes, the results of the HGN test, and Ruffin's involvement in a traffic accident at 1:00 a.m.

{¶ 9} Ruffin was later transported to the police station where he also refused to take a chemical breath test. At the suppression hearing, the State attempted to introduce evidence and testimony related to Ruffin's refusal to submit to the breath test, but Ruffin objected on the grounds that it was irrelevant to his suppression motion. The trial court agreed and sustained Ruffin's objection.

{¶ 10} At the beginning of Hunt's cross-examination, Ruffin requested that the trial court take judicial notice of the entire NHTSA Participant Manual. The court declined to take judicial notice of the 600-page manual, and instructed Ruffin that he could continue with the hearing. Later, Ruffin attempted to admit the complete manual as a defense exhibit. The trial court denied its admission but allowed Ruffin to cross-examine Hunt on specific portions of it.

4.

{¶ 11} On the specifics of the HGN test, Hunt testified that he did not tell Ruffin before the test that he was going to test his eyes, nor did he ask Ruffin if he was wearing contacts. Hunt did not instruct Ruffin to stand with his feet together, hands at the side, and to hold his hands still, but he did instruct Ruffin to follow the pen with his eyes only. Hunt also checked for equal pupil size prior to beginning the passes with the pen. Hunt admitted that he did not hold the pen steady for four seconds at maximum deviation twice on each eye but explained that that was the portion of the test where Ruffin was not maintaining visual focus on the pen, so he did not note any clues on distinct and sustained nystagmus. Hunt also testified that he was trained to turn off his overhead flashing lights and limit as many distractions as possible when administering the HGN test, acknowledging that he should "[t]ry to face [the] subject away from flashing or strobe lights that could cause visual or other distractions that could impede the test." He stated that he tried to move Ruffin to a different location to reduce distractions, but Ruffin refused. Consequently, Ruffin was facing the blinking hazard lights of the semi-truck, which was about a 12-second walk away from where the HGN test was administered. In addition, Ruffin was facing rapidly moving traffic in close proximity on Interstate 75.

{¶ 12} When asked what factors were present that gave him reasonable suspicion to conduct the field sobriety tests, Hunt listed the odor of alcohol, Ruffin's glassy eyes, and the fact that Ruffin was involved in a traffic accident at 1:00 a.m. even though Hunt had not determined the cause of the accident at that point. Hunt did not, however, observe Ruffin to have any dexterity issues, unsteadiness, swaying, or an unkempt

5.

appearance.  Nor did he notice Ruffin fumble with any document or fail to locate any document.  He also did not see any alcohol containers in the vehicle.

{¶ 13} Following the suppression hearing, the trial court entered its judgment on July 11, 2023, denying Ruffin's motion to suppress.  It found that Hunt had reasonable suspicion to initiate field sobriety tests based on (1) the traffic accident that occurred at 1:00 a.m., (2) the odor of alcohol coming from Ruffin, (3) Ruffin's eyes appearing to be glassy, and (4) Ruffin's response that the amount of alcohol that he consumed "ain't got nothing to do with it."

{¶ 14} The trial court then found that Hunt conducted the field sobriety tests in substantial compliance with the NHTSA manual for five reasons.  First, Hunt asked Ruffin if he could check his eyes and asked whether he had any problems with his eyes.  Ruffin responded that he had glaucoma, but Hunt testified that his training informed him that glaucoma does not affect nystagmus.  Second, Hunt positioned his pen in front of Ruffin's eyes and instructed him to follow the tip of the pen with his eyes only and to not move his head.  Third, Hunt checked for equal pupil size at the beginning of the testing.  Fourth, Hunt made at least eight passes of Ruffin's eyes during the HGN test and observed four out of six clues of impairment.  He was unable to observe six out of six clues because Ruffin would not maintain focus on the pen for the duration of time needed to observe possible nystagmus at maximum deviation.  Fifth, Hunt testified that the blinking hazard lights of the semi-truck and the passing traffic on Interstate 75 did not interfere with the HGN test.  The court noted that no evidence was presented to show that

6.

Ruffin exhibited optokinetic nystagmus due to the blinking hazard lights of the semi-truck or the passing traffic. Further, although Ruffin argued that the lights and traffic made it difficult for him to focus on the pen, the court disagreed and found that Ruffin, himself, interfered with the administration of the HGN test when his eyes did not follow the pen out to the side for the required duration of time.

{¶ 15} Finally, the trial court found that probable cause existed for the arrest based on the totality of the circumstances including (1) the traffic accident late at night, whether or not Ruffin was at fault, (2) the odor of alcohol, (3) Ruffin's glassy eyes, (4) Ruffin's response that how much he had to drink "ain't got nothing to do with it," (5) Hunt observing four out of six clues from the HGN test, and (6) Ruffin's "pleasant[ly] uncooperative" failure to perform the walk and turn test.

{¶ 16} Thereafter, on September 8, 2023, Ruffin filed a supplemental motion in support of his original March 27, 2023 "Motion for Leave to File Pretrial Motions." Ruffin sought leave to file a second suppression motion challenging purported violations related to the chemical breath test that he refused to take. The trial court denied the motion that same day.

{¶ 17} Ultimately on September 20, 2023, when the case was set to begin for a jury trial, Ruffin withdrew his plea of not guilty and entered a plea of no contest to the two OVI counts in the indictment as charged. The trial court accepted Ruffin's plea and found him guilty. At sentencing, the trial court merged the two offenses, with the State

7.

electing to proceed on the second count. The trial court ordered Ruffin to serve a mandatory jail sentence of 120 days, followed by three years of community control.

## II. Assignments of Error

{¶ 18} Ruffin timely appeals his judgment of conviction and asserts three assignments of error for review:

> 1. The trial court erred by failing to take judicial notice of the NHTSA manual.
>
> 2. The trial court erred by denying Ruffin's motion to suppress evidence.
>
> 3. The trial court erred by denying Ruffin's motion for leave to file a second suppression motion after the State withheld evidence and Ruffin requested leave to file before the first suppression hearing.

## III. Analysis

### A. Judicial Notice

{¶ 19} In his first assignment of error, Ruffin argues that the trial court erred when it did not take judicial notice of the entire 600-page NHTSA manual. Alternatively, he argues that the court erred when it did not allow him to admit the entire manual.

{¶ 20} As an initial matter, it should be noted that "the Rules of Evidence do not apply to suppression hearings." *State v. Boczar*, 2007-Ohio-1251, ¶ 17, citing Evid.R. 101(D)(1) and 104(A). Nonetheless, Evid.R. 201 provides for judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable

8.

dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). A trial court may take judicial notice on its own, whether requested or not, but "shall take judicial notice if requested by a party and supplied with the necessary information." Evid.R. 201(C) and (D). As to the NHTSA manual, this court has held that "a trial court may take judicial notice of the NHTSA standards governing the administration of field sobriety tests, including the HGN test." *State v. Cook*, 2006-Ohio-6062, ¶ 18 (6th Dist.), quoting *State v. Stritch*, 2005-Ohio-1376, ¶ 16 (2d Dist.).

{¶ 21} In this case, it is not necessary to determine the extent to which the trial court did or did not err in refusing to admit or take judicial notice of the entire NHTSA manual because in either event any error would be harmless. Under Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "The term 'substantial rights' has been interpreted to require that 'the error must have been prejudicial.'" *State v. Moore*, 2021-Ohio-765, ¶ 37 (6th Dist.), quoting *State v. Fisher*, 2003-Ohio-2761, ¶ 7.

{¶ 22} Ruffin argues that the failure to admit the entire NHTSA manual was prejudicial because "he was not able to inquire about whether NHTSA procedures contained within the manual were adhered to." To the contrary, the record reveals that Ruffin presented the manual for field sobriety tests and proceeded to question Hunt with it. While the manual was not admitted into evidence, Ruffin, citing *State v. Nation*, 2023-

9.

Ohio-106, ¶ 34 (6th Dist.), identifies in his appellate brief the nine steps that an officer should follow when administering the HGN test:

> (1) check the subject for eyeglasses or contact lenses, (2) provide verbal instructions for the test, (3) position the stimulus 12 to 15 inches in front of the subject and slightly above eye level, (4) check for equal pupil size and resting nystagmus, (5) check for equal tracking, (6) check for lack of smooth pursuit, (7) check for distinct and sustained nystagmus at maximum deviation, (8) check for onset of nystagmus prior to 45 degrees, and (9) total the clues.

In his questioning, Ruffin asked Hunt if he checked for contact lenses, provided correct verbal instructions for the test, checked for equal pupil size, and held the stimulus steady for four seconds at maximum deviation twice on each eye as he checked for sustained nystagmus. His questioning, and the order thereof, demonstrates that he was able to thoroughly examine Hunt regarding his compliance with the NHTSA procedures. Ruffin, therefore, was not prejudiced by the trial court's failure to admit or take judicial notice of the entire NHTSA manual.

{¶ 23} Accordingly, Ruffin's first assignment of error is not well-taken.

**B. Denial of Motion to Suppress**

{¶ 24} In his second assignment of error, Ruffin argues that the trial court erred when it denied his motion to suppress. Specifically, he contends that Hunt lacked reasonable suspicion to conduct field sobriety tests and that he lacked probable cause to arrest him for OVI.

{¶ 25} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8; *State v. Escobedo*, 2023-Ohio-3410, ¶

10.

34 (6th Dist.). "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*; *Escobedo* at ¶ 34. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*; *Escobedo* at ¶ 34.

{¶ 26} The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, Section 14 of the Ohio Constitution is nearly identical and "affords the same protection in felony cases." *State v. Eatmon*, 2022-Ohio-1197, ¶ 27.

### 1. Reasonable Suspicion to Conduct Field Sobriety Tests

{¶ 27} "An officer's request that a driver participate in field sobriety testing qualifies as a seizure subject to Fourth Amendment protection and must be 'separately justified by specific, articulable facts showing a reasonable basis for the request.'" *State v. Dye*, 2021-Ohio-3513, ¶ 64 (6th Dist.), quoting *Bowling Green v. Murray*, 2019-Ohio-4285, ¶ 19 (6th Dist.). A number of factors may be considered when determining, under the totality of the circumstances, whether an officer had reasonable suspicion sufficient to conduct field sobriety tests including, but not limited to:

11.

(1) the time of day that the stop occurred; (2) the area where the stop occurred; (3) whether there was erratic driving that might point to a lack of coordination; (4) the existence of a 'cognizable report' that the driver might be intoxicated; (5) the appearance of the suspect's eyes; (6) impairments related to the individual's speech; (7) an odor of alcohol in the car or on the person; (8) the strength of that odor; (9) lack of coordination after the stop; (10) 'the suspect's demeanor'; and (11) the suspect's admission of alcohol consumption.

*Id.* at ¶ 65, citing *State v. Evans*, 127 Ohio App.3d 56, 63, fn. 2 (11th Dist. 1998).

{¶ 28} Ruffin argues that reasonable suspicion was lacking because there was not competent, credible evidence that he had glassy eyes, and even if his eyes were glassy, that along with the odor of alcohol is not sufficient. More specifically, his argument that there was not competent evidence that he had glassy eyes is based on Hunt's inability to identify from his body camera video the exact moment when he noticed Ruffin's eyes. Hunt, however, testified that while he could not point it out on the video, he "[knew] what [he] saw with [his] own eyes."

{¶ 29} In this case, Hunt's testimony that Ruffin's eyes were glassy was credible given the corroboration from the other responding officer that there was a smell in the car, Ruffin's implicit acknowledgment that he had been drinking when he stated that his alcohol consumption "ain't got nothing to do with it," and the fact that Hunt was responding to an accident that occurred at 1:00 a.m. Thus, there was competent credible evidence supporting the trial court's finding that Ruffin's eyes were glassy.

{¶ 30} As to his second contention that glassy eyes and an odor of alcohol is not sufficient to establish reasonable suspicion, Ruffin relies on *Dye*. In that case, the trial court found that the officer had reasonable suspicion necessary to conduct field sobriety

12.

tests because he could smell a strong odor of alcohol both on Dye and in his truck, his speech was slurred, and his eyes were glassy and bloodshot. *Id.* at ¶ 67. On appeal, this court held that there was not competent, credible evidence that Dye's speech was slurred based on dash camera video that showed him speaking clearly and the officer's changing testimony of when he noticed the allegedly slurred speech. *Id.* at ¶ 75. Without the slurred speech, the only indicators left were the strong odor of alcohol and the glassy, bloodshot eyes, and even on those issues this court questioned the credibility of the officer's testimony. Examining other cases, this court commented that "*without additional indicia of intoxication, we tend to find that the odor of alcohol and bloodshot, glassy eyes—standing alone—are insufficient to provide reasonable suspicion for field sobriety tests.*" (Emphasis sic.) *Id.* at ¶ 69.

{¶ 31} Here, unlike *Dye*, other indicia of intoxication exist including Ruffin's involvement in a traffic accident at 1:00 a.m. and his implicit admission that he had been drinking. Ruffin tries to minimize the importance of the traffic accident, noting that no determination had been made as to who was at fault for causing it. But the fact that the cause of the accident was still unknown does not remove it from consideration in looking at the totality of the circumstances to determine whether there was reasonable suspicion to conduct field sobriety tests.

{¶ 32} "The level of suspicion required to meet the reasonable-suspicion standard 'is obviously less demanding than that for probable cause' and 'is considerably less than proof of wrongdoing by a preponderance of the evidence' but is 'something more than an

13.

inchoate and unparticularized suspicion or hunch.'"  (Internal quotation marks removed).
*State v. Hawkins*, 2019-Ohio-4210, ¶ 20, quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  In this case, Hunt was presented with a situation where Ruffin was involved in a traffic accident in the early morning hours, he smelled of alcohol, his eyes were glassy, and he did not deny but rather impliedly admitted that he had been drinking.  Considering these factors, Hunt's suspicion that Ruffin was under the influence of alcohol was reasonable and was more than just an inchoate and unparticularized hunch.

{¶ 33} The trial court did not err when it determined that there was reasonable suspicion to conduct field sobriety tests.

### 2. Probable Cause to Arrest

{¶ 34} Ruffin alternatively argues that the trial court erred when it found that there was probable cause for his arrest.

{¶ 35} "The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence."  *State v. Bailey*, 2023-Ohio-1594, ¶ 39 (6th Dist.), quoting *State v. Bruck*, 2021-Ohio-2789, ¶ 23 (6th Dist.).  "When determining probable cause, the court must examine the totality of the facts and circumstances surrounding the arrest."  *Id.*, quoting *Bruck* at ¶ 23.

14.

Examples of circumstances that may support or undermine probable cause in an OVI case include the manner of driving, the day and time, the driver's appearance and ability to communicate, including glassy and bloodshot eyes and slurred speech, the driver's behavior and cooperation, the driver's coordination and balance, the smell of alcohol, the presence of alcohol containers in the vehicle, the admission of drinking alcohol or other incriminating statements, and the driver's performance on field sobriety tests.

*State v. Scott*, 2022-Ohio-2071, ¶ 40 (6th Dist.), quoting *State v. Baah*, 2016-Ohio-7131, ¶ 21-22 (10th Dist.).

{¶ 36} Here, the factors supporting probable cause are Ruffin's involvement in the traffic accident at 1:00 a.m., the odor of alcohol, his glassy eyes, his statement that how much he had to drink "ain't got nothing to do with it," the presence of four out of six clues on the HGN test, and his conduct in being "pleasant[ly] uncooperative" when asked to perform the walk and turn test. Although Ruffin did not appear disheveled or have slurred speech, did not display un-coordination or a lack of balance, and did not have alcohol containers in his vehicle, the other clues are sufficient to demonstrate that Hunt had probable cause to arrest him for OVI.

{¶ 37} Ruffin, however, challenges the admissibility of the results of the HGN test as a factor for probable cause. R.C. 4511.19(D)(4)(b) provides that an officer may testify concerning the results of field sobriety tests if "it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety

15.

administration." "'Substantial compliance' is not defined by the statute. Thus, whether the facts satisfy the substantial compliance standard is determined on a case-by-case basis." *State v. Nation*, 2023-Ohio-106, ¶ 27 (6th Dist.), citing *State v. Mapes*, 2005-Ohio-3359, ¶ 44 (6th Dist.). "For the results of [field sobriety tests] to be admissible, the state must lay a proper foundation as to (1) the administering officer's training and ability to administer the tests and (2) the actual techniques he used to administer the tests." *Id.* at ¶ 31, citing *State v. Boles*, 2020-Ohio-4485, ¶ 15 (2d Dist.); *State v. Boczar*, 2007-Ohio-1251, ¶ 28. "The state's burden of proof for the admissibility of field sobriety test results is not onerous; if unchallenged, general testimony that the officer followed all pertinent rules and regulations is sufficient." *Id.*, citing *State v. Aiken*, 2021-Ohio-3503, ¶ 27 (6th Dist.). "When the defendant challenges the general testimony, however, the state is required to present more particular evidence of compliance." *Id.*, citing *State v. Murray*, 2020-Ohio-45, ¶ 19 (2d Dist.).

{¶ 38} Ruffin contests the administration of the HGN test in six ways. First, he argues that Hunt did not complete a sufficient number of passes of the stimulus in front of his eyes. "When checking the subject's eyes, the manual instructs officers to check for each of the three clues in each eye independently—resulting in a maximum possible score of six clues of impairment—and to repeat the test for each clue twice on each eye." *Id.* at ¶ 35. Thus, "to complete the HGN test as prescribed by the NHTSA manual, an officer would have to complete a minimum of 14 'passes' of the stimulus in front of the eyes—at least one pass per eye (or two total passes) to check for equal tracking and two

16.

passes per eye (or four total passes) for each of the three clues." *Id.* The trial court found that Hunt conducted eight passes, but the video from Hunt's body-worn camera unmistakably shows that he conducted at least 16 passes.[1]

{¶ 39} Second, he argues that Optokinetic Nystagmus occurred because the test was conducted too close to the semi-truck's blinking hazard lights. Third, and relatedly, he asserts that optokinetic nystagmus occurred because he was facing rapidly moving traffic in close proximity. From the State's exhibit from the NHTSA manual presented at the suppression hearing, "Optokinetic Nystagmus occurs when the eyes fixate on an object that suddenly moves out of sight, or when the eyes watch sharply contrasting moving images. Examples of Optokinetic Nystagmus include watching strobe lights, rotating lights, or rapidly moving traffic in close proximity." The manual further states that "[d]uring the HGN test, the suspect is required to fixate the eyes on a penlight, pencil, or similar object that moves in accordance with the HGN testing procedures, thus Optokinetic Nystagmus will not occur. The movement of the stimulus and the fixation on the stimulus by the subject precludes this form of nystagmus from being observed by the officer." Sixty pages later, the manual states that the officer should "[t]ry to face subject away from flashing or strobe lights that could cause visual or other distractions that could impede the test."

{¶ 40} As presented in the sections of the NHTSA manual before the court, the presence of Optokinetic Nystagmus is a separate issue from the general recommendation

---

[1] The State argues that Hunt completed 16 passes, this court counted 18 passes.

to have the subject face away from flashing lights that could cause distractions when administering the test. Optokinetic Nystagmus is avoided where the subject can fixate on the stimulus as it is moving. The video evidence shows that this occurred. Although Ruffin was unable to maintain fixation when the stimulus was at the edge of his periphery, when it was otherwise passing in front of his eyes he was focused on it. Further, it should be noted that the semi-truck's hazard lights were a fair distance away, such that it took Hunt 12 seconds to walk from Ruffin's car to the semi-truck. In addition, traffic on the roadway was light with only 12 vehicles passing during the two minutes and ten seconds that it took to administer the test.

{¶ 41} Fourth, he argues that Hunt did not hold the stimulus steady at maximum deviation for four seconds, twice on each eye. Hunt concedes that he did not do this because Ruffin was not maintaining focus on the stimulus. Hunt, however, also did not find any clues from this part of the test, so any purported failure to substantially comply with the standards is inconsequential.

{¶ 42} Fifth, Ruffin states that Hunt did not tell him that he was going to check his eyes, nor did he instruct him to stand with his feet together, hands at his sides, and to hold his head still and follow the pen with his eyes only. Contrary to his assertion, the video shows that Hunt asks Ruffin if he has any issues with his eyes. Then, before conducting the test Hunt instructs him to follow the pen with his eyes only and to keep his head still. He does not instruct Ruffin to stand with his feet together and his hands down, but Ruffin was already standing with his hands by his side.

18.

{¶ 43} Finally, Ruffin argues that Hunt did not note that he had glaucoma. He concedes that the NHTSA manual instructs that if the subject reports any issues, the test can proceed but the issue should be noted. In this case, Hunt testified that based upon his training, glaucoma does not impact the HGN test.

{¶ 44} Based on the foregoing, the trial court did not err when it found that Hunt substantially complied with the standards for conducting the HGN test. Moreover, based upon the results of that test, in conjunction with the other facts and circumstances present, the trial court did not err when it found that probable cause existed to support Ruffin's arrest for OVI.

{¶ 45} Accordingly, because reasonable suspicion existed to perform field sobriety tests and probable cause existed to arrest him for OVI, Ruffin's second assignment of error is not well-taken.

### C. Denial of Motion for Leave to File Second Suppression Motion

{¶ 46} In his third and final assignment of error, Ruffin argues that the trial court abused its discretion when it denied his motion for leave to file a second motion to suppress.

{¶ 47} "A motion to suppress is a pre-trial motion and must be filed within 35 'days after arraignment or seven days before trial, whichever is earlier.'" *State v. Rhea*, 2018-Ohio-2597, ¶ 7 (6th Dist.), quoting Crim.R. 12(D). But, under the rule, "[t]he trial court has the discretion to extend the time for making pretrial motions 'in the interest of justice . . . .'" *Id.*, citing Crim.R. 12(D). The trial court's decision on whether to extend

19.

the time for filing a motion to suppress is reviewed for an abuse of discretion. *Id.*, citing *State v. Garrett*, 2005-Ohio-4832, ¶ 14 (2d Dist.). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*; *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 48} Ruffin asserts that he could not timely file his second motion to suppress the chemical breath test evidence because the State failed to timely produce discovery on the maintenance and calibration records of the machine. Since he was charged with refusing to be tested by the machine, he argues that it was relevant whether the machine was not working or was in poor working condition, but without the records from the State, he did not have the information available to file his motion to suppress. Thus, he contends that the trial court abused its discretion when it did not allow him to file his motion after he received the records from the State.

{¶ 49} Upon review, the trial court's decision was not arbitrary, unreasonable, or unconscionable. The simple fact is that there were no results from the chemical breath test to suppress because Ruffin refused to be tested, and it is his refusal that is critical to the offense. Unless he is a clairvoyant, Ruffin's decision to refuse the test could not have been impacted by a revelation months later that the machine was in fact not properly working on the night of his arrest. The trial court did not abuse its discretion when it denied Ruffin's motion for leave to file a second suppression motion.

{¶ 50} Accordingly, his third assignment of error is not well-taken.

20.

## IV. Conclusion

{¶ 51} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed.  Ruffin is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.